Humphries vs. Harrison.

---

HUMPHRIES VS. HARRISON.

1. MARRIED WOMEN: *Collection by the Husbnd of her choses in action.*
   Husband and wife by their joint deed conveyed land belonging to the wife by inheritance and by general purchase; the purchase money note was executed to the wife, and was collected and used by the husband without objection on the wife's part; held, that he acquired absolute title to the proceeds.

2. —— *Rights under the statutes.*
   Before a married woman can hold property under the 1st section of ch. 111 Gould's Digest she must comply with the provisions of the 7th and 8th sections by scheduling her property, and, if acquired in any of the modes

pointed out in the 8th section, there must be an express declaration of purpose; the constitution of 1868 contained provisions similar to those of the statute, except that it embraced property acquired before, as well as during coverture, and the statute was not repealed by it. *Semble* that the statute does not embrace money or choses in action.

3. ——

If a wife permits her husband to use her means it becomes his absolutely and she cannot, after his death, assert a claim against his estate on account of it.

APPEAL from *Phillips* Circuit Court.

Hon W. H. H. CLAYTON, Circuit Judge.

*Palmer & Sanders*, for appellant.

*Tappan & Horner*, contra.

WALKER, J.:

At the October term 1873, of the Probate Court of Phillips County, Margaret Harrison presented a duly authenticated claim against the estate of James H. Harrison, as follows:

*The Estate of James H. Harrison,*
                    *To Margaret Harrison, Dr.*

To amount collected by James H. Harrison
    on note due me by Manlius Taylor
    March 7, 1871.................................$ 1,052
To amount collected by him on same note
    March 20, 1871.................................    440
To amount collected by him on same note
    July 18, 1871.................................  1,000
To amount collected by him on same note
    July 15, 1871.................................    158
To amount collected by him from M. Tay-
    lor, cash payment on land.................  1,000
                                              ————
                                                    $3,650

The case was heard upon an agreed statement of facts, which are as follows: "That the claimant, Mrs. Margaret Harrison, sold lands to Manlius Taylor, part of which she inherited from her father, and part she purchased as general estate. Her husband,

James H. Harrison, (the defendant's intestate) joined her in the deed. Taylor paid cash $1,000 on said land, which was used by James H. Harrison in his life time, and Taylor executed his note to Mrs. Harrison for the sum of $3,788.25, of which the said James H. Harrison collected and used $2,650., and had the note made payable to her."

In addition to this agreed statement, the statement of James C. Tappan was taken, subject to objection for irrelevancy, or incompetency, which was as follows: "Harrison always claimed said money as his wife's, and collected it as her money; he always spoke of it as her money; he always expressed his desire to keep her estate separate and distinct from his own." To the admissibility of Tappan's statement the defendant excepted, but his exception was overruled.

The finding of the facts by the Court was but a reiteration of the evidence, with the addition that, in the collection of the money, Harrison acted as the agent of his wife.

At the instance of the defendant the Court made the following declarations of law:

*First*—Upon a sale of real property by the husband and wife, inherited by the wife, or purchased by her and conveyed to her by general conveyance, the proceeds of the sale, if reduced to possession by the husband, becomes his absolute property, and his estate is not liable for the same after his death.

*Second*—That to constitute property of the wife separate property under section 6, article 12, of the Constitution of Arkansas, she must do some substantial act so as to designate it, and, upon her failure to do so, his marital right will attach, and she cannot recover for moneys used by him in his lifetime against his estate after his death.

*Third*—That the wife cannot become a general creditor against the estate of her husband for moneys she has permitted him to use in his life time.

*Vol. xxx.—6.*

The first and second propositions were approved by the Court, the third refused to be given, and, thereupon, the Court, upon its own motion, made the following declaration of law as applicable to the case:

"Where, on a sale of real property belonging to the wife, the notes or evidences of indebtedness are taken in the name of the wife, and, when collected by the husband, he shows by his acts and declarations an intention to keep them as the separate property of the wife, it is not such a reduction of the wife's choses in action into possession, as will bar her right to recover the amount collected by him from his estate." Whereupon the Court rendered judgment against the defendant for the sum of $3,650, with six per cent. interest from the rendition of the judgment until paid, and classed the same for payment in the fourth class.

The defendant filed a motion for a new trial:

Because the finding of the Court is contrary to law.

Because it is not warranted by the testimony in the case.

Because the Court erred in declaring the law in the case.

Because the Court erred in allowing the evidence of witness Tappan to be introduced.

Because the judgment is neither sustained by the law nor the evidence.

Because the Court erred in refusing to declare the law as asked by defendant.

The motion was overruled, defendant excepted and brought the case here by appeal.

The record presents the whole case with commendable brevity and distinctness.

The relations of husband and wife and their respective rights to property at the common law, are too clearly settled to need any particular reference to them in this case. Most of the questions of difficulty presented to the Courts now, arise upon the

proper construction of statutes enacted to enlarge the marital rights of the wife, and to determine to what extent they have innovated upon the more restricted rights of the wife under the common law rule.

Limiting our inquiry to the rights of the husband to the choses in action of the wife, which is the main question to be settled in this case, we may assume it as well settled that the choses in action which belonged to the wife at the time of the marriage, unless reduced to possession by the husband during coverture, survive to her if the longest liver. But a distinction is drawn between the rights of the husband to the choses of the wife, to which she had title at the time of the marriage, and to those which accrued to her afterwards; in the former it is held that the husband cannot sue for them without joining the wife; in the latter instance it is held that the husband may sue in his own name without joining her, and that the title vests absolutely in him without actual reduction to possession. *Toller Executors,* 219. Mr. Justice Clayton, who delivered the opinion in the case of *Wade* v. *Grimes,* 7 Howard Miss. Reports, 432, cites as authority *Toller; Griswold* v. *Penniman,* 2d Conn.; *Banks* v. *Marksbury,* 3d Littell; *Armstrong* v. *Limongton,* 2 Taylor, 266; *Wilkinson* v. *Perrin,* 7 Monroe, 216, and *McGrunder* and *Nichols* v. *Stewart,* 4 How., 204, and then cites several adjudicated cases which hold that it matters not whether the chose in action was executed to the wife before or after coverture, unless reduced to possession the chose in action at the death of the husband survives to the wife, but remarks, "we consider the distinction to be well founded."

In the case of *The Fourth Ecclesiastical Society in Middleton* v. *Mathew,* 15 Connecticut, page 588, it was held that "where the land of the wife was sold by the husband and wife, and a promissory note for the avails was taken in her name, and kept by her

during her life, after which it was found in her drawers, and was inventoried by her husband as a part of her estate; such note, when made, became the property of the husband." Mr. Justice Church, who delivered the opinion of the Court, said: "It is quite unnecessary for us now to examine the state of the common law regarding the right of the husband to choses in action accruing to the wife during coverture, and whether her husband may sue alone, or must, or may join his wife as plaintiff in an action to recover them, because our own Courts, by a uniform course of decisions, founded, as they believe, upon the principles of the common law, have held that such a chose in action vests absolutely in the husband. The note of James Mathew, when it was executed, became the property of Dr. Minon." This is a case directly in point and a much stronger one than the one now under consideration. In that case the note never was in the possession of the husband, but remained in the drawer of the wife, was found there by the husband at her death, and inventoried by him as hers. Whilst in this, the husband received a thousand dollars cash at the time of the sale and converted it to his own use, and, although the debt for the balance of the purchase money was evidenced by a note payable to the wife, so far as appears in evidence, it never was in her possession, but remained in his, and from time to time the residue of the money in suit was collected by him and applied to his own use, and, when so collected and appropriated, was reduced to possession and became his absolute property, whether considered as a note executed before or after marriage. All this while the wife is never heard to assert any claim to the note or to the money so collected by the husband. For ought that appears, the money may have been expended in the support and maintenance of his family.

Perry, in his work on Trusts, p. 277, says: "But as under the law in relation to settlements for the separate use of a married woman, if she allows her husband to receive her property,

and to deal with it as his own in his business, or in payment of his debts, or in support of the family, she would be presumed to assent to such use; so if a married woman owning property under the statutes, allow her husband to receive her separate property and to use it in business, or mix it with his own in such manner that her property cannot be identified, or separated from the general mass, she will lose her right to such property as against her husband's creditors, and she will have no remedy, except in equity, as a creditor."

In order properly to understand the statute in force in this State at the time the right of action accrued in this case, which it is claimed enlarges the marital rights of the wife, we must bear in mind that the provision of the first section is operative only upon condition that the *femme covert* complies with the provisions of the 7th section, ch. 3, p. 765, Gould's Digest. By the first section, " Any married woman may become seized and possessed of any property, real or personal, by direct bequest, demise, gift or distribution in her own right as her own property: *Provided,* the same does not come from the husband after coverture."

Section 7 provides "that, before any married woman shall be entitled to the privileges and benefits of this chapter, she shall cause to be filed in the recorder's office in the county where she lives a schedule of the property derived through her."

The 8th section provides " that the deed, bequest, grant, decree, or other transfer of property of any kind to any married woman, shall expressly set forth that the same is designed to be held exempt from the liabilities of her husband."

What are the privileges and benefits conferred by the first section of that chapter? Most clearly they are the privileges and benefit of holding separate property in her own right, and, until there is a compliance with the 7th and 8th sections, there is no

right to take and hold separate property. "Separate property, as contra-distinguished from general property, is that of which a married woman has the exclusive control and benefit, independent of her husband, and the proceeds of which she may dispose of as she pleases, and its character as such must be imparted to the property by the instrument by which she is invested with such right to it." Cord on Rights of Married Women, ch. 9, p. 255. "All of a wife's real property does not belong to her as her separate property, but is her general property, and is subject to her husband's marital rights as before."

At the common law we have seen that the personal property, held by the wife at the time of her marriage, vested absolutely in the husband, as well as the choses in action when reduced to possession, and it follows, as a consequence, that the right to hold a separate property in personal property is derived alone from the statute, in order to do which the statute provisions must be complied with. If the wife suffers the husband to deal with her separate property as his own, or pays his debts with it, or in support of his family, or to mix it with his own in such a manner as that it cannot be distinguished or identified, she loses it as against her husband's creditors, and has no remedy, says Perry, except in equity as a creditor. Although the terms used in the first section of the act are broad, in view of the provisions in sections 7 and 8, we are not prepared to say that the terms "any property, real or personal," was intended to embrace money, or even choses in action. Scheduling money would be no setting apart or identification of it, and, although choses in action might be identified, still, from their nature, they must soon be converted into money or subject to be lost.

A reference in the instructions asked was made to the provisions of the constitution of 1868, and of its effect upon the marital rights of a *femme covert.* This court, at its last winter

session, had occasion to consider the effect of the constitutional provision upon the rights of the wife in the case of *The Executors of Keatts* v. *Stillwell and wife,* and it was held that, whilst the constitutional provisions conferred upon the *femme coverts* the right to hold both real and personal property, whether acquired before or after marriage, whether by gift, grant, inheritance, devise or otherwise, as their separate property, with power to bequeath or devise the same, no power was conferred to sell or convey such separate estate, and it was also ordained in the same section that laws should be passed providing for the registration of the wife's separate property, and that when so registered, and so long as not entrusted to the management or control of her husband only as an agent, it should not be liable for any of his debts, engagements or obligations. Thus it will be seen that these constitutional provisions are substantially the same, so far as the right to take and hold property is concerned, as that of section 1, in Gould's Digest, except that it extends to property acquired before as well as after marriage; and the same legislative restrictions as to registration were required as those of sections 7 and 8 of that chapter.

After this review of the question of title to the money received from Taylor for the purchase of the wife's lands, and of the authorities bearing upon it, we are led to the conclusion "That the note having been executed to the wife during coverture, the money collected thereon was the husband's, and not the separate property and money of the wife. There was no evidence whatever that the husband acted as the agent of the wife in the collection of the money, that she set up any title to the note, or to the money when collected, or attempted to control the use or disposition of it, and, whilst the evidence conduced to show the husband expressed his wish and intention to keep his wife's estate separately from his own, that these declarations are flatly

contradicted by his acts, and that, under the state of case presented by the evidence, the court erred in finding the facts to be, that in the collection of the money Harrison acted as the agent of his wife. There was no evidence whatever that he acted for her, unless it be his loose declarations that he wished to keep her property separate from his.

The court correctly held the law, in its second ruling at the instance of the defendant, that the wife, under our law, must do some substantial act so as to designate her property, and if she fails to do this the marital rights of the husband will attach. We have, by express statute, declared what this substantial act shall be. It shall be by scheduling and registration, or by an express declaration of purpose, if by deed, etc. Until this is done, no right to hold separate property is conferred by the first section, or by the constitution, which expressly ordains that laws similar to sections 7 and 8 shall be passed, and, until they were passed after the constitution of 1868, the sections in Gould's Digest, 1, 7 and 8 remained in force. They were statutes of a general nature, and not inconsistent with the provisions of the constitution, except that the constitution permits the wife to hold property, whether acquired before or after coverture, whilst section 1 limits the right to property acquired during coverture.

The first and second declarations of the law, made at the instance of the defendant were correct. The third was erroneously overruled.

If the money was collected and appropriated to the use of the husband by the permission or with the assent of the wife, it became absolutely his. The court should have set aside the judgment and granted a new trial.

Let the judgment be reversed and a new trial granted.