## MACK *v.* JOHNSON.

### Opinion delivered June 23, 1894.

*Statute—Repeal by implication—Widow's share.*

> The act of Nov. 29, 1862 (Mans. Dig., sec. 2599) which provided that a widow, upon filing a relinquishment of dower in the husband's estate, should be entitled to receive a child's portion thereof absolutely, was repealed by Const. 1864, sched., sec. 7, which provided that all laws in force on March 4, 1861, should still be in force, thereby impliedly repealing all legislation subsequent to that date.

Appeal from Sebastian Circuit Court, Greenwood District.

EDGAR E. BRYANT, Judge.

*Sandels & Hill* for appellants.

Argue several questions not decided.

*Rose, Hemingway & Rose* also for appellants.

Secs. 2599, 2600 and 2601 were repealed by the Constitution of 1864.   Schedule, sec. 7 ; 24 Ark. 479 ; 26 *id.* 523 ; 19 Ill. 38.   Osborne's case (24 Ark. 479) is not overruled by 30 Ark. 198, or 49 *id.* 554.   When a people meet in convention to adopt a constitution, the only limitation upon its power must be found in the inhibitions of some paramount law.   Cooley, Const. Lim. (6 ed.) 45 ; 31 N. Y. 9.   There is no *paramount* law, except the constitution of the U. S.   Whether the constitution made shall treat of fundamental principles only, or abound in

details, is a matter for the convention.  Cooley, Const.
Lim. (6 ed.) 46 ; Jameson on Const. Con. 430.

*Ben T. Duval* and *Jno. H. Pitchford* for appellee.

*John S. Little* and *Ben T. Duval* in reply for ap-
pellant.

Secs. 2599 etc. were not repealed by the constitu-
tion of 1864.   There is no inconsistency or repugnancy
between the two laws, as in 24 Ark. 479, Sedg. on Stat.
etc. 125.   But Osborne's case conflicts with the spirit of
subsequent decisions.   30 Ark. 198 ; 49 *id.* 561 ; 37 *id.*
113.   The estate created by sec. 2599 is a *contingent*
estate, depending on an *election to release* dower.   Both
laws may stand.   The object of the constitution of 1864
was to revive and put in force only such laws as had
been suspended or repealed by the Confederate legisla-
ture.   The dower acts and statute of discounts etc. were
never repealed or suspended by any act.   *Suth. Stat.
Const.* sec. 156.

WOOD, J.   We are asked by this appeal to deter-
mine whether a widow is entitled to a child's part in the
estate of her deceased husband, under sec. 2599, Mansf.
Dig., which is as follows :  "The widow of any deceased
person, who shall file in the office of the clerk of the
court of probate, or with the probate court of the proper
county, a relinquishment of her right of dower in and
out of the estate of her deceased husband, shall be enti-
tled to receive of the estate of which her said husband
died seized and possessed, whether real, personal or
mixed, a portion or share thereof, absolutely in her own
right, equal to that of a child, which shall be set aside
and delivered to her as now provided by law for dower."
This act was approved November 29, 1862.   The con-
cluding sentence of sec. 7 of the schedule to the consti-
ution of 1864 is as follows :  "And it is further hereby

declared that all laws in force in this State on the fourth day of March, 1861, are still in force, not inconsistent with the provisions of this constitution, and which have not expired by limitation therein contained."

This court, at its December term, 1866, in an opinion by Chief Justice Walker, passing upon this clause, said: "It was evidently the intention of the convention to declare the laws of the State which were in force on the fourth of March, 1861, a code of laws to be in force in the State, to the exclusion of all other laws, which laws so in force on the fourth of March, 1861, were to take effect and be in force from and after the adoption of the constitution of January, 1864, which was adopted by the people of the State to whom it was submitted for ratification and approval on the 16th day of March, 1864; from which time all other laws were, by necessary implication, repealed." Ex parte *Osborn*, 24 Ark. 479.

When the convention of 1864 is considered in the light of the times which brought it into existence, the purposes for which it assembled, and when the constitution itself is looked to, especially with reference to the language used in the preamble, as well as the schedule, the conclusion is irresistible that the convention intended to put in force a code of laws to the exclusion of all others, as decided in Ex parte *Osborn*. The reasoning of the learned judge who delivered the opinion is sound, his utterances are clear and forceful, and we certainly could not hope to strengthen the opinion by going over the same ground. This decision has never been overruled, nor its authority in the least impaired, by any announcement of this court in a subsequent case.

In *Berry* v. *Bellows*, 30 Ark. 198, and *Bragg* v. *Tuffts*, 49 Ark. 561, which counsel say conflict "*in spirit*," the questions were not analogous. In the former, the court, through Judge English, was simply declaring the effect of the clause in the constitution of 1868,

and a similar one in the preamble to the constitution of 1864, which declared the convention of March 4th, 1861, and "all the action of the State of Arkansas under the authority of said convention, of its ordinances, or its constitution, whether legislative, executive, judicial or military, null, and void." In this decision the court re-affirmed the doctrine announced in *Hawkins* v. *Filkins*, 24 Ark. 286, and overruled all cases in conflict with it, but Ex parte *Osborn* was not mentioned. *Hawkins* v. *Filkins* decides that the convention of 1864 had no power to declare void *ab initio* all the acts of the convention of 1861, and all the acts of the State government thereunder which were not in aid of the Rebellion, and in no manner contravening the authority of the general government. Ex parte *Osborn* was delivered at the same term of the court, at a later day, and in this case Judge Walker says : "There is nothing in the case of *Hawkins* v. *Filkins* which in any manner conflicts with the conclusions at which we have arrived." The court, through Judge English, in *Berry* v. *Fellows* was discussing the power of the convention to declare void all laws of the Confederate government from the beginning, which is altogether a different thing from the power of a convention to declare in force a code of laws, prospective in their operation.

In *Bragg* v. *Tuffts*, which counsel rely upon as overruling Ex parte *Osborn*, Judge Smith uses this language : "Now a convention called, for instance, to frame a new constitution has no inherent right to legislate about matters of detail. All of the powers that it possesses are such as have been delegated to it either by express grant or necessary implication. The passage of an ordinance, then, to raise revenue was an assumption of powers by the convention that was never ratified by the people of the State. For it is a noteworthy fact that the convention of 1861 never submitted any of its

work to the test of a popular vote." The act of the legislature of Jan. 15, 1861, called into being the convention of 1861, to "take into consideration the condition of political affairs, and determine what course the State of Arkansas shall take in the present political crisis." That convention was undertaking, by an ordinance outside the constitution, "to provide revenue for the State of Arkansas," to pass a war measure. This was the question Judge Smith was discussing; but had he been considering a clause in the schedule of a constitution not in violation of the constitution of the United States, declared by a convention which had assembled to frame a new constitution and set up a new government in harmony with the general government, and which had been ratified by the people, we apprehend no such language as quoted above would ever have been used by him. It may be conceded that the only proper province of a convention, when it undertakes to frame a constitution, is to confine its work to enactments of a fundamental character, and that it transcends the correct functions of constitutional conventions when it goes into the details of legislation. But we are discussing a question of power, not of propriety. When the people themselves, or their representatives, have assembled in convention to frame a constitution and set up a new government, and have declared what shall constitute the body of their organic law, where is the limitation to their power? Under our theory of government, the people are sovereign, and it rests with them at least to say, by ratification or rejection, whether they approve or disapprove. And the constitution of the United States must preserve for the States their republican form of government, so that the constitution of a State must not conflict with any of the provisions of the Federal constitution. These are the only two sources of limitation of which we have any

knowledge. When the people have adopted for themselves such a constitution, "when the sovereign body has clearly moved, and that movement gives evidence of irresistible force and continuance, the various systems of officials constituting the existing government must heed and bow to it, or go down before it." Jameson on Const. Con. 541. Courts must obey, not abrogate, constitutional provisions. It would be a dangerous doctrine to announce that the courts could annul and set aside such provisions of the organic law as trenched, by reason of detail, upon the sphere more properly occupied by the legislature. Mr. Jameson says: "Doubtless, a constitution, stuffed with legislative details, may acquire legitimacy by its being ratified by the people; for, where a constitution contains a positive provision, the courts can not ignore it, or annul it; but the impropriety of such legislation would not thereby be disproved or lessened." Jameson on Con. Conv. 430. And Judge Cooley says: "How far the constitution of a State shall descend into the particulars of government is a question of policy addressed to the convention which forms it." Cooley's Const. Lim. p. 46.

But even if the decision in Ex parte *Osborn* was erroneous, we should feel constrained to uphold it. This court, by an undeviating line of decisions, has recognized its binding authority ever since its rendition, and it would be nothing less than calamitous to repudiate it now. Property rights have grown up under it, and to overrule it might throw the law into a state of inextricable confusion. Its overthrow would bring upon the statute books all the laws of the Confederate legislature which have not been displaced by subsequent legislation. One, to which our attention has been called in another case, might do incalculable mischief in unsettling titles. It is this:

"An act to regulate proceedings under chapter 170 of the Digest. "Section 1. Be it enacted by the General Assembly of the State of Arkansas, that decrees of confirmation rendered after the passage of this act, under the provisions of chapter 170 of the Digest, shall be void as against the owner or owners of the land to which the title is confirmed, at the time the same was sold, and all persons claiming title thereto under him, her or them, unless such parties are made defendants to the petition for confirmation by name; and if residents of the county, actually served with notice, or if non-residents, notified as provided by sec. 2 of said chapter. Sec. 2. Be it further enacted. That this act be in force from its passage." "Approved November 29th, 1862."

Chapter 170 of Gould's Digest, to which this act refers, corresponds to chapter twenty-three of Mansf. Dig., p. 265. Sec. 577 of Mansf. Dig., which the above law, if in force, would repeal as to the notice required in confirmation proceedings, provides: "The purchasers * * * * * * may, at any time after the expiration of the time allowed for such redemption, publish six weeks in succession, in some newspaper in this State, a notice calling on all persons who can set up any right to the lands so purchased in consequence of any informality * * * to show cause," etc.

This is the law under which notice has been given in confirmation proceedings, and under which the courts have acquired jurisdiction in such cases. If the law of 1862 has been in force since its passage, the courts have been proceeding for over thirty years without jurisdiction in confirmation cases. Several involving the question have found their way to this court. *Buckingham* v. *Hallett*, 24 Ark. 519; *Worthen* v. *Ratcliffe*, 42 Ark. 330; *McCarter* v. *Neil*, 50 Ark. 188; *Boehm* v. *Botsford*, 52 Ark. 400; *Caldwell* v. *Martin*, 55 Ark.

470. In the last case it is said: "The statute that authorizes the proceeding to confirm tax titles was a part of the Revised Statutes, and has for more than half a century, in much the same form, comprised a part of the statute law of the State." Doubtless, many causes in which this statute has been invoked and applied in their adjudication have never been appealed to this court.

The consequences of overruling Ex parte *Osborn* might be far-reaching, and this consideration alone would move us to apply the doctrine of "*stare decisis,*" even if the cause was wrong in principle. It is unfortunate, and to be regretted, that any widow should have proceeded, under sec. 2599, Mans. Dig., to ask for a child's part in the estate of her deceased husband, and to be deplored that the lower courts have in some instances treated it as the law. Just to what extent it has been followed, and what rights have grown up under it, it is impossible to say. But this court could not afford to overturn its own decisions, and unsettle the law which has been so long a rule of property, out of sympathy even for those whose dower rights are highly favored. The distinguished digester calls attention in the foot note to the fact that the statutes of 1862 were never published. This, when taken in connection with what he said in the preface to his Digest, may be considered as suggesting a doubt in his mind as to the validity of the statute. Perhaps this was sufficient to put many upon inquiry, and it is therefore probable that it has not been generally followed. As to whether or not it shall be re-enacted, and have place among our statute laws, is addressed to the discretion of the legislature. If, in their wisdom, they see proper to enact such a law, they may greatly improve many of its features, rendering its enforcement more easy and available.

The other questions raised pass out with the determination of this. The judgment is reversed, and cause remanded for proceedings not inconsistent .with this opinion.