STULL *v.* GRAHAM.

Opinion delivered April 27, 1895.

1. *Widow—Child's portion—Act of 1862.*

   The act of November 29, 1862, which provided that a widow, upon filing a relinquishment of dower in her husband's estate, should be entitled to receive a child's portion thereof absolutely, was repealed by the Const. 1864, sched., sec. 7. *Mack* v. *Johnson,* 59 Ark. 333, followed.

2. *Husband and wife—Reduction of choses in action to possession.*

   Under the constitution of 1868, art. 13, sec. 6, providing that the property of a married woman "shall, so long as she may choose, be and remain her separate property," where lands of a wife were sold by the husband and wife, and the purchase notes taken payable to the husband, it will be presumed, in the absence of any contrary showing, that they were reduced to his possession, and where he subsequently foreclosed his vendor's lien, and purchased the land, he acquired an absolute title.

3. *Effect of conveyance of wife's land by husband and wife.*

   Prior to the passage of the married woman's enabling acts, the effect of a conveyance by a husband and his infant wife of her land, where she subsequently disaffirmed the deed during coverture, was to vest in the grantee an estate for the life of the husband, leaving the fee in the wife.

4. *Dower—Estate* pur autre vie.

   Where a husband dies seized of an estate in land for the life of another, his widow is entitled to receive as dower one-third thereof absolutely, as in case of personalty; but her right of dower therein can be relinquished only in the method provided in case of real estate.

5. *Dower—Rented lands.*

   Under Sand. & H. Dig. sec. 2537, providing that "if the dower of any widow is not assigned and laid off to her within two months after the death of her husband, she shall remain and possess the mansion or chief dwelling house of her late husband, together with the farm thereto attached, free from all rent, until her dower shall be laid off and assigned to her," where one died leaving his lands, including those attached to the mansion, rented for a term of years, such lease has the effect, during its continuance, to detach the lands from the mansion, and the widow is entitled to recover as dower only one-third of all

the rents, but after expiration of the lease she would be entitled to receive as dower all the rents of the lands attached to the mansion until her dower is assigned, and one-third of the rents of other lands.

6. *Homestead—Rented lands.*

Under Const. 1874, art. 9, sec. 6, providing that " if the owner of a homestead die, leaving a widow, but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life," where a homestead is set apart to a widow in her husband's lands, she is entitled, during her natural life, to receive the rents and profits of all lands which constitute a part thereof from the death of her husband, although the lands had been leased by him for a term of years.

7. *Dower in personalty.*

A widow is entitled to receive as dower, absolutely and in her own right, one-third part of the personal estate, including cash on hand, bonds, bills, book accounts and evidences of debt, whereof the husband died seized or possessed ; and she is entitled to receive, in addition, the specific articles mentioned in Sand. & H. Dig. sec. 73 ; also, where the estate is solvent, she is entitled to take such personal property of the estate as she may wish, not to exceed the appraised value of one hundred and fifty dollars.

8. *Homestead—Estate in common.*

A widow may be entitled to a homestead in lands of which her husband died seized in common with another.

Appeal from Crittenden Circuit Court, in Chancery.

JAMES E. RIDDICK, Judge.

*W. M. Randolph & Sons* for appellant.

1. Secs. 2599–2601, Mansf. Dig., have never been repealed. The effort of the pretended constitution of 1864 to repeal them was ineffectual, because such pretended constitution was never authorized by, nor submitted to, nor adopted nor approved by, the people of the State, and never was a constitution of the State. In holding contrary to the above proposition, the circuit court has violated the constitution of the United States, the laws of congress, and the proclamations of the president. The last clause of the schedule to the con-

stitution had reference solely to laws governing elections. In 24 Ark. 480–483, it was held that all acts of the legislature not in conflict with the constitution of the United States, nor the State, passed after March 4, 1861, were valid and effectual. In 24 Ark. 479, it was held that an act passed after March 4, 1861, was repealed by implication by the constitution of 1864. See 24 Ark. 487. The constitution of 1864 was never promulgated as a constitution by any officer or tribunal known to the constitution of 1836 or 1861, nor by the president of the United States, nor by any military or civil officer of the United States, nor was it adopted or ratified by the people. Cooley, Const. Lim. (6 ed.), pp. 41, 42 ; Jameson, Const. Conv. secs. 11, 14, 114, 121– 5, 415, 418 ; 7 How. 195 ; 75 Pa. St. 39 ; 6 Cush. 573. The constitution of 1864 was recognized in only one case. 24 Ark. 483. In 30 Ark. 203–4 it was said the framers of that constitution assembled without authority. The decision in Osborn's case is worthless as an authority, as it was pronounced by a court sitting under that constitution. 45 Miss. 511 ; 9 Wall. 129 ; 22 Wall. 276. We contend that the court erred in 27 S. W. 231, in holding the acts passed after March 4, 1861, were repealed by implication. Constitutions cannot legislate. Jameson, Const. Conv. sec. 411 ; 6 Barr (Pa.), 509 ; 35 Ark. 73 ; Cooley, Const. Lim. (6 ed.), p. 137, etc. ; 8 N. Y. 483 ; Jameson, Const. Conv. secs. 22, 315, 423, etc., 418 ; 49 Ark. 554, 560–1. There is nothing in the plea of *stare decisis*, relied on in *Mack* v. *Johnson*. In 43 Ark. 469 and 504, this court overruled a line of decisions extending from 16 Ark. 12, decided in 1855, to 30 Ark. 407, decided in 1875. See, also, 6 Wall. 231, overruling 6 Cranch 253 ; Cooley, Const. Lim. ch. 4, pp. 60– 68, etc. ; 1 Kent, Com. p. 473–477. The fourteenth amendment prevents the State from depriving Mrs. Stull of the benefits of the law under which her rights at-

tached. 154 U. S. 45. Repeals by implication are not favored. Cooley, Const. Lim. (6 ed.) p. 182. There is no inconsistency or conflict between the constitution and the act. 41 Ark. 149; 34 *id.* 499. The clear meaning of the constitution of 1864 was to make void only such acts as were in conflict with the constitution and laws of the United States. 24 Ark. 288; Cooley, Const. Lim. pp. 218–219 (6 ed.); Pott. Dwar. Stat. pp. 154–5, and notes.

2. Mrs. Stull was entitled to dower in the amount collected from Brown & Co. in Tennessee. The administration in Tennessee is no obstacle in the way, as the estate is solvent, and no debts to be paid there. 42 Ark. 164; 55 *id.* 225, 227; 13 How. 458; 2 Black, Judg. sec. 563.

3. She was entitled to the rent due from Swepston for 1892, and for all rents until her dower is assigned. 1 Scribner, Dower, ch. 11, sec. 12, pp. 222–3, sec. 6, p. 361; 2 *id.* sec. 9, p. 725; 7 Cr. 370; 1 Humph. 1; 8 Ark. 9, 41–2; 42 Ark. 503, 515–16; Mansf. Dig. secs. 2603–4, 2587–8; 40 Ark. 404–6; 34 *id.* 63, 71–2; 45 *id.* 341; 55 *id.* 222.

4. She is entitled to the homestead. 42 Ark. 503. Also to dower. Mansf. Dig. secs. 2571, 2591. Also to $150. *Ib.* sec. 2601. Also to the specific articles given by Acts 1887, p. 206. Mansf. Dig. sec. 62; 5 Ark. 608.

5. The notes Dr. Stull took from Harper for Mrs. Stull's interest in the land belonged to him as husband, and he acquired title by his purchase. 15 Ark. 180; 19 *id.* 379; 30 *id.* 124; 37 *id.* 17; 42 *id.* 503, 512–13; 50 *id.* 237.

6. Dr. Stull has the title to the three tracts for the life of Harris, and Mrs. Stull is entitled to dower therein as personalty. 51 Ark. 294; 21 *id.* 592.

*W. G. Weatherford* and *N. W. Norton* for appellee.

1.   The widow is not entitled to a child's part.   59 Ark. 333.

2.   Dr. Stull would be estopped by his acts to claim an estate for the life of Harris, in the land conveyed to Mrs. Graham.   18 Ark. 165; 24 *id.* 399; 33 *id.* 468; 2 Herm. Est. 1102.   All claiming under him are estopped. *Id.* 712.   Dr. Stull did not die *seized* of this interest, and Mrs. Stull is not entitled to dower.   Under sec. 2540, Mansf. Dig., and 48 Ark. 566, this interest was *personalty*, of which Dr. Stull did not die *seized*.

3.   The heir is entitled to a proportionate share in the rent of 1892, and the widow to dower in the remainder.   27 Ark. 554.

4.   The Tennessee administration has not yet been closed.   It will be time enough for Mrs. Stull to claim dower in that fund when the matter is settled.

5.   The case of 58 Ark. 298 settles the question as to homestead and dower.

GRANT GREEN, JR., Special Judge.   Dr. G. T. Stull, a citizen of Crittenden county, died on the 29th day of February, 1892, leaving the appellant his widow, and Mrs. Parmelia G. Graham his only heir at law.

W. S. Graham, his son-in-law, on the 14th day of March following, filed with the clerk of the probate court a paper purporting to be the last will and testament of the decedent, who admitted it to probate, and issued letters testamentary to Graham.   At the May term, 1892, the probate court approved the action of the clerk in admitting the will to probate, and issued letters testamentary to Graham.

On the same day the probate court made the order just referred to, the 2d day of May, 1892, the widow filed with the clerk and recorder in his office a quit-claim deed, renouncing the provisions made for by the will,

announcing her election to take dower under the statute, and conveying to the heir "all the lands and interest which was conveyed to her" by the will.

Shortly afterwards, on the 25th day of May, 1892, the widow filed in the office of the clerk of the probate court of Crittenden county a written instrument, formally acknowledged, reciting the execution and probate of the will, her election to be endowed, and release of interest under the will; and, for the purpose of receiving a child's part in the estate absolutely and in her own right, concluding as follows: "I, Mrs. Addie B. Stull, do hereby relinquish, convey and release all my right of dower in and out of the estate of my deceased husband, and do claim and elect to receive a portion equal to that of a child out of said estate in lieu of all such dower— all as is provided in the statute in that behalf. And I do file this instrument in the office of the clerk of the probate court with a view of having the benefit of said relinquishment and claim."

The executor filed an inventory, and proceeded with his duties. The plantation (except the residence) on which the testator resided at the time of his death had been rented for the year 1892 by him to one W. W. Swepston for the sum of $3274, less ten per cent. for looking after the place, and his note taken therefor, which was listed as part of the personal property by the executor in the inventory. The widow occupied the residence during the remainder of the year after the death of her husband, and was still occupying it when the proof in the case was taken.

From the time she filed in the clerk's office the paper dated the 25th day of May, the widow claimed and insisted upon having a portion in the estate equal to a child's *in fee*, and that, for the purpose of ascertaining her interest, an account be taken, not only of all that the husband died seized, but of all that the daughter had

received from her father during his life, that the same be treated as advancements, that the widow be equalized with the daughter as if she was a child, and the balance, if any, divided between them.

Dr. Stull, at the time of his death, owned in fee the following described lands : the northeast quarter of section 3; the south half of northeast quarter of section 4; the west half of southwest quarter of section 11; and the west half of east half of southwest quarter of section 11 : all in township 7 north, range 7 east. He was at the time of his death also in the possession of the following lands: the southeast quarter of section 3; the east half of section 10, and the northeast quarter of section 15, in the same township and range. His home was on the northeast quarter of section 15, and had been for a number of years before his death. The facts as to his claim and title to the last three tracts are as follows : They were owned in fee by William S. Goode, Sallie L. Goode and Mary A. Goode. Dr. Stull married Sallie L. Goode, and purchased from William S. Goode his undivided one-third interest, which he conveyed to Stull. Sallie L. was the mother of the appellee, Parmelia G. Graham. Mary A. Goode married John W. Harris, and while he and she were husband and wife, they, on the 2nd day of February, 1867, for $900, conveyed to Dr. Stull an undivided one-third interest in the three tracts. On the 20th of October, 1868, Dr. Stull and his wife, Sallie L., conveyed these three tracts to L. W. Harper for the consideration of $3200. The purchase money was not paid by Harper, but he executed his three promissory notes therefor, due October 20, 1871, 1872, and 1873, respectively. The deed shows that these notes were made payable to the order of G. T. Stull, and a lien was retained on the land to secure their payment. Harper failed to pay the notes, and G. T. Stull, the payee and holder of them, instituted a suit in the chan-

cery court of Crittenden county to enforce their collection, and his lien on the lands.   Harper was served with process, but failed to defend, and a decree was pronounced by the court in favor of Stull for the sum of $4640, the amount of the principal and interest of the notes, and the same declared to be a lien upon the lands, it was directed that they be sold if the amount was not paid by a day therein named.   The judgment was not paid, and the land was sold by the court's commissioner, and purchased by Dr. Stull.   The sale was confirmed, and the land conveyed to Stull on the 23rd day of April, 1877. After he had thus become the purchaser of these three tracts of land, and while he was in possession claiming them as his own, Mrs. Mary A. Harris and her husband, John W. Harris, brought a suit in the Crittenden circuit court in chancery in which she disaffirmed her action in making the deed to Stull on the 2nd day of February, 1867, alleging that she was a minor at the time, and sought to annul her conveyance of her one-third interest in these tracts.   This case proceeded to hearing in the circuit court, and that court decreed cancellation of the deed, but, upon appeal to this court, the decree was reversed, and the case remanded ; the court holding that as to John W. Harris the deed to Stull was good, and conveyed all his interest, but that as to Mrs. Harris it should be annulled, requiring, as a condition precedent, that Mrs. Harris pay to Dr. Stull the amount of an indebtedness he had released to her at the time the deed was executed.   The case is reported under the style of *Stull* v. *Harris*, 51 Ark. 294, and a copy of the decree is in the record.

After this suit of *Harris* v. *Stull* had been so decided, the parties entered into a compromise, by which Dr. Stull agreed to pay Mrs. Harris $4000 for her interest in the three tracts of land, of which the indebtedness she owed him, as fixed by the Supreme Court,

should form a part. Pursuant to this agreement, he paid her $2000, and executed his two promissory notes for the sum of $1000 each, and which he afterward paid, and caused her to convey the one-third interest in the land to his daughter, the appellee, Parmelia G. Graham. The deed was executed on the 6th day of November, 1889. Dr. Stull remained in possession of the lands up to his death. At the time of Dr. Stull's death, John W. Harris was living, and was still alive at the time the evidence was taken in this case. Mrs. Graham claims an undivided one-third interest in these three tracts, and that the most of the cleared land on the Stull place is on them, and that she is entitled to one-third of the rents. The personal property, other than the note of Swepston for the rent of 1892, consisted of a book account against W. N. Brown & Co., of Memphis, Tenn., amounting to $3,383.50 (the complaint alleges that to collect this claim the executor had to qualify in the State of Tennessee, and that he is chargeable in that jurisdiction with it for a term), and notes and book accounts amounting to $439.19, and cattle, mules, and farm implements of the value of $210.

The widow claimed after the execution of the instrument, dated May 25, 1892, that she was entitled to a child's part in the estate, instead of dower.

On the 13th day of October, 1892, W. S. Graham and Parmelia G. Graham brought this action in the Crittenden circuit court in chancery to settle rights of the parties, and to assign dower to the widow. The widow appeals from the decree of that court deciding that the widow is not entitled to take a child's part in the estate, but that she is entitled to a homestead, including the dwelling-house, and one-third for life in the remainder of his real estate, and one-third absolutely of all the personal property of which he was the owner at the time of his death, including choses in action; that she is also en-

titled to the specific articles as mentioned in section 2, ch. 116, Acts of 1887, and section 63 of Mansfield's Digest; that the homestead and dower be assigned by commissioners out of all the lands of which Dr. Stull died seized, including the three tracts in which he held the interest for the life of Harris ; and, for the purpose of assigning dower in the personalty, that the account of the executor be stated by a master named by the court.

Mrs. Graham also appeals from so much of the decree as directed that dower be allotted the widow in the one-third interest in the three tracts claimed by her under the deed from Harris and wife.

The complaint, answer and cross-complaint, and reply, present quite a number of questions for determination by this court.

The first by the appellant is whether the paper probated and filed as the last will of Dr. Stull is a will, and whether the letters issued to Graham empower him to act as executer or not? As the widow renounced all provisions made by the paper for her, and claims wholly under the statutes, and the heir makes no contention on this question, it is not important or necessary to determine it.

1. Widow not entitled to child's portion

The second contention of the appellant is more important. She affirms that, having renounced the provisions made for her by the will, and, by the instrument filed with the clerk of the probate court on the 25th day of May, 1892, having released and relinquished all her right of dower in the estate, she is entitled, under the act of the general assembly of the State of Arkansas, approved Nov. 29, 1862, being the same in substance as secs. 2599–2601, inclusive, of Mansf. Dig., to receive a portion in fee equal to a child's share in the estate. And, in support of this contention, counsel have cited quite an array of authorities, and presented strong arguments, both written and oral, to show that the

convention which assembled and framed the constitution
of 1864 exceeded its province and powers in attempting
to enact and repeal laws, and that the constitution itself
was not properly adopted by legal vote of the people.
These questions have frequently been before the courts
for consideration; and in the case of *Mack* v. *Johnson*,
59 Ark. 333, recently decided by this court, it was held
that the act in question was repealed by the constitution
of 1864. That was a well-considered case, and for the
reasons stated in the opinion in that case, and which it
is not necessary to repeat here, it will not be overruled,
but adhered to. There was no error in so much of the
decree as declared that the widow was not entitled to
receive a portion of the estate in fee equal to that of a
child. *Mack* v. *Johnson*, 59 Ark. 333, and cases cited
there.

As to the three tracts of land held by the Goodes, 2. Reduction by husband of wife's choses in action into possession. the sale of the two-thirds interest owned by him and the one-third owned by his wife, and the conveyance pursuant thereto by Dr. Stull and Sallie L., his wife, taking the purchase money notes to himself, and the subsequent foreclosure and purchase by him and conveyance to him by the court's commissioner of all the land, vested in him all of Sallie L.'s interest therein. At the time of the sale of these lands to Harper, October 20, 1868, the constitution of 1868 had been adopted, and was in force, in which it is provided that the property of a married woman shall, so long as she may choose, be and remain her separate property. But there was a requirement that laws providing for its registration should be passed, "and when so registered, and so long as it is not entrusted to the management or control of her husband, otherwise than as agent, it shall not be liable for any of his debts, engagements or obligations." A statute providing for its registration was enacted April 28, 1873. In the case of *Humphries* v. *Harrison*, 30 Ark. 79, the

following declaration of law was approved: "Upon a sale of real property by the husband and wife, inherited by the wife, or purchased by her and conveyed to her by general conveyance, the proceeds of the sale, if reduced to possession by the husband, becomes his absolute property."

At the common law the choses in action of the wife, when reduced to possession by the husband, vested absolutely in him. Taking the purchase money notes payable to himself by Dr. Stull was a reduction to possession, and he became the owner of the debt, in the absence of any showing that it was the intention of the wife to keep the same as her separate property; and, in purchasing at the sale of the land, he took the title in discharge of his individual claim against Harper. *Hydrick* v. *Burke*, 30 Ark. 124; *Humphries* v. *Harrison, id.* 79; *Tatum* v. *Hines*, 15 Ark. 180; *Ferguson* v. *Moore*, 19 Ark. 379; *Dyer* v. *Arnold*, 37 *id.* 17; *Gainus* v. *Cannon*, 42 *id.* 503; *Thorn* v. *Weatherly*, 50 Ark. 237.

3. Effect of conveyance by husband and wife of wife's land.

The next question is, what estate did Dr. Stull have in the one-third interest in the three tracts of land conveyed to him by Harris and wife in 1867, and subsequently by them at his instance also conveyed to Mrs. Graham, his daughter, in 1889? It is conceded that the effect of the conveyance in 1867, after the disaffirmance by Mrs. Harris, was to vest in Stull an estate for the life of Harris, leaving the fee in Mrs. Harris, subject to the right of occupancy by Stull during the life of Harris. Counsel seem to agree that this follows from the decision of this court in the case of *Stull* v. *Harris*, 51 Ark. 294. By their deed to Mrs. Graham in 1889, Harris and wife conveyed the fee to her. The estate held by Stull is the right to occupancy and to collect the rents during the life of Harris, and will terminate only at his death.

Wash. Real Prop. sec. 276 ; 4 Kent, Com. sec. 27 ; Tiedeman on Real Property, secs. 90–108 ; *Harrod* v. *Myers*, 21 Ark. 592.

The estate of Harris, resultant upon the marriage to Mary A. Goode, is not controverted by the parties, but it is contended by Mrs. Graham that the conveyance to her in 1889 vested in her all the interest of both Harris and his wife, and that the widow is not entitled to dower therein. It will be necessary, first, to determine whether the interest conveyed to Stull in 1867 was real estate or personal property, and how it can be transferred or conveyed. Mr. Kent says : ''This peculiar estate, *pur autre vie*, has frequently been termed a descendible freehold, but it is not an estate of inheritance, and perhaps, strictly speaking, it is not a descendible freehold in England, for the heir does not take by descent. It is a freehold interest *sub modo*, or for certain purposes, though in other respects it partakes of the nature of personal estate.'' 4 Kent, Com. sec. 27.

<span style="float:right">4. **Dower in** estate *pur autre vie.*</span>

Our statute of descents and distributions (Sand. & H. Dig. sec. 2488) is as follows : ''The term 'real estate,' as used in this act, shall be construed to include every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or extinguished by the death of the intestate, seized or possessed thereof in any manner, other than by lease for years and estate for the life of another.''

In the case of *Lenow* v. *Fones*, 48 Ark. 566, in construing this statute with reference to an estate for years, Cockrill, C. J., speaking for this court, says : ''From this definition of 'real estate' a lease for years is expressly excepted.'' And ''the leasehold interests retain, then, the character or incidents of personal property, as at common law, and the statutes which govern the right to distribution of and dower in other personal property are applicable to them.'' An estate ''for the life of an-

other" being in the same exception in the statute with
"a lease for years," it is thus fixed by the statute as a
character of personal property.   But it still retains and
possesses some of the characteristics of real estate, par-
ticularly as to the manner of conveying and the right of
dower therein when conveyed by the husband without
relinquishment by the wife.

Our statute prescribing the method of conveying
real estate is that "all lands, tenements and heredita-
ments may be aliened and possession thereof transferred
by deed without livery of seizin."   Sand. & H. Dig. sec.
696.   And "the term *'real estate,'* as used in this act,
shall be construed as co-extensive in meaning with
'lands, tenements and hereditaments,' and as embracing
all chattels real."   *Ib.* sec. 702.   And "a married woman
may relinquish her *dower* in the real estate of her hus-
band by joining with him in a deed of conveyance,
thereof, and acknowledging the same in the manner here-
inafter prescribed."   *Ib.* sec. 706.   So, while it possesses
some of the characteristics of personal property, this
peculiar estate can only be conveyed and transferred
by deed, in which the wife must join as required by
statute.   Section 2541 is as follows :   "A widow shall
be entitled, as part of her dower, absolutely and in her
own right, to one-third part of the personal estate, in-
cluding cash on hand, bills, notes, book accounts and
evidences of debt wherof the husband died seized or
possessed."

From the foregoing it follows that Dr. Stull was,
at the time of his death, seized of an estate in the one-
third interest of Mrs. Harris in the three tracts during
the life of John W. Harris ; that in allotting dower it
should be treated as personalty ; and that Mrs. Stull,
not having relinquished her dower therein by any con-
veyance to Mrs. Graham, is entitled to dower therein
absolutely during the continuance of the life estate.

The doctrine of estoppel cannot be invoked to defeat her dower therein. She could relinquish it only in the manner prescribed by statute. It does not appear that she was consulted about the conveyance from Harris and wife to Mrs. Graham, nor that she was called upon to act in the matter. By the deed to Mrs. Graham, only the fee which remained in Mrs. Harris passed, and that subject to the estate for life previously conveyed in 1867 to her father, Dr. Stull.

As to the rent of the plantation for the year 1892, for which the deceased had taken a note or contract, two questions are presented. The widow contends that, her dower not having been assigned, as it was the duty of the heir to do, she is entitled to all of it, under section 2537, Sand. & H. Dig. The heir contends that the deceased, by the renting to Swepston for that year, and taking his rent note, had parted with the possession for the term of the lease, and that, the note having gone into the inventory of the personal estate, it should be treated as personal property; thus limiting the dower to one-third thereof. The widow further contends that her dower not having been assigned, she is entitled to the rent of the farm for all subsequent years until it is assigned. Our statutes enlarge the widow's common law quarantine. Section 2537 is as follows: "If the dower of any widow is not assigned and laid off to her within two months after the death of her husband, she shall remain and possess the mansion or chief dwelling-house of her late husband, together with the farm thereto attached, free of all rent, until her dower·shall be laid off and assigned to her." And section 2553, *Ib.*, reads: "It shall be the duty of the heir at law of any estate, of which the widow is entitled to dower, to lay off and assign such dower as soon as practicable after the death of the husband of such widow."

5. Dower in rented lands.

Dower in the personalty is a creature of our statute. At common law it attached only to real estate.   Wash. Real Prop. p. 174.

The renting of, the farm lands to Swepston for the year 1892 detached them for that year at least from the dwelling.   The testator had parted with his right of control of the premises for a term.   The widow is entitled to dower in the rent of 1892 as in the other personalty.   See Scribner on Dower (2 ed.), chap. 11, sec. 12, p. 234; *Ib.* chap. 18, sec. 6, p. 377; *Orrick* v. *Pratt,* 34 Mo. 226, 234.

The Supreme Court of Missouri, in construing a statute similar and almost identical in its requirements with ours, say : "There remains only the question whether, if, at the death of the husband, a portion of the plantation be rented out and possessed by a tenant, the widow is entitled to the possession or receipt of rents of that part, and the question is not without difficulty.   On the one hand, it forms a portion of the plantation, to the whole of which she is entitled, and, on the other hand, the statute, which confers this right, apparently supposes an actual possession in the husband, to which she succeeds, by providing that she shall remain in the mansion house, etc.   If there be distinct farms or plantations upon one tract of land, it is clear that the widow has her quarantine of that only which belonged to the capital mansion house of her husband, that is, of the farm upon which was situated the house usually occupied by the husband immediately before the time of his death.   Again, there may be one farm composed of several distinct tracts of land, and it appears probable that in such a case the widow would be entitled to her quarantine of the whole.   If the owner of a plantation rent out a particular field, or part of it, that is not necessarily a separation of the field or part from the plantation.   Whether it be or not is a question of

fact for determination in each case. If it be not permanently separated, yet, the widow's right being merely possessory, and she being unable to have actual possession during the term created by her husband, she cannot have her quarantine of such rented part until the term shall expire, and then her right would immediately attach." *Orrick* v. *Pratt, supra.*

The homestead should first be set apart, and the widow will be entitled, from the death of the husband, to the rents of the cleared lands which fall on the homestead, and to one-third of the remainder of the rent of 1892.

6. As to homestead in rented lands.

It was the duty of the heir to assign and lay off the widow's dower immediately after she dissented from and renounced the provisions made for her under the will; and she is entitled to remain in the mansion house, and to collect the rents from the farm thereto attached until her dower is assigned. In the case of *Mock* v. *Pleasants,* 34 Ark. 71, which was a contest between the widow, who was also the administratrix, and the creditors of the estate for the rent of the farm attached to the dwelling, and which she had been enjoying without accounting therefor for a number of years, Harrison, J., speaking for the court, after quoting the statute (section 2537, *supra*), in speaking of the duty of the widow as administratrix, says: "She was under no obligations, therefore, to account for the rents or profits of the plantation. They belonged to her as widow, and not as administratrix. If the plaintiffs desired to have any part of them applied toward the payment of the debts, they should have adopted the proper means to have her dower assigned to her." The question was before this court in *Trimble* v. *James,* 40 Ark. 393, and *Davenport* v. *Devenaux,* 45 Ark. 341, and also in *Mobley* v. *Andrews,* 55 Ark. 222, and the rule as announced in *Mock* v. *Pleasants* adhered to. Hence we conclude that the

widow will be entitled to the rents of the plantation attached to the dwelling after the year 1892, except the Harris one-third interest, until her dower is assigned.

From the proof there seems to be a farm, the King place, which is detached from the plantation on which the dwelling is located. The widow is entitled to one-third of the rents thereof until her dower is assigned. *Trimble* v. *James*, 40 Ark. 408.

7. Dower in personalty.    The widow is entitled, as part of her dower, absolutely and in her own right, to one-third part of the personal estate, including cash on hand, bonds, bills, book accounts, and evidences of debt whereof the husband died seized or possessed (*Crowley* v. *Mellon*, 52 Ark. 1); and to the specific articles enumerated in section 73, Sand. & H. Dig. And, the estate being solvent, she is also entitled to take such of the personal property of the estate as she may select, not to exceed the appraised value of one hundred and fifty dollars. Sand. & H. Dig. sec. 75.

As to the homestead, the constitutional provision is: "The homestead outside any city, town or village, owned and occupied as a residence, shall consist of not exceeding one hundred and sixty acres of land, with the improvements thereon, to be selected by the owner, provided the same shall not exceed in value the sum of two thousand five hundred dollars, and in no event shall the homestead be reduced to less than eighty acres, without regard to value." Sec. 4, art. 9, const. 1874. "If the owner of a homestead die, leaving a widow but no children, and said widow has no separate homestead in her own right, the same shall be exempt, and the rents and profits thereof shall vest in her during her natural life." And where there are children, their rights are limited to their minority. Sec. 6, art. 9, const. 1874.

8. Homestead in estate in common.    Dr. Stull, at the time of his death, was occupying as his homestead the dwelling located on the northeast

quarter of section fifteen. This is one of the the three tracts in which Mrs. Graham holds the title to one-third of the fee, but this does not defeat the homestead right, as was held in the cases of *Greenwood* v. *Maddox*, 27 Ark. 648 ; *Sentell* v. *Armor*, 35 Ark. 49 ; *Sims* v. *Thompson*, 39 Ark. 301–305 ; *Thompson* v. *King*, 54 Ark. 9.

The questions presented as to the manner of setting apart the homestead and assignment of dower in the real estate have so recently been fully considered and settled in the case of *Horton* v. *Hilliard*, 58 Ark. 298, that it will only be necessary to refer to that case, and to say that we adhere to the rule there announced. And, following that case and others above referred to, there should be a partition of the northeast quarter of sec. 15, the east half of sec. 10, and the southeast quarter of sec. 3, T. 7 N., R. 7 E., giving one-third in value to Mrs. Graham, and two-thirds to the estate of Stull, so as to let the dwelling or mansion house fall on the part allotted to the estate. Out of the part allotted to Mrs. Graham, the widow, should be assigned as dower one-third absolutely during the life of Harris ; and out ot the two-thirds allotted to the Stull estate, and all other lands whereof G. T. Stull was seized of an estate of inheritance at any time during the marriage, unless the same shall have been released in legal form, one-third should be assigned to the widow as dower for and during her natural life ; and out of such part of the same as she may choose, provided it can be done without material injury to the estate. The homestead, which is in addition to dower, should be set apart so as to include the dwelling house, and to comprise 160 acres, if the value thereof is not more than $2500, but in no event less than eighty acres.

The principal part of the personal property belonging to the estate, other than the Swepston note, consisted of a book account against W. N. Brown & Co. of

Memphis, Tenn. The widow contends that this should be considered in the allotment of dower in the personalty, and that she may have at once one-third thereof. The executor contends that it was a debt in another State, and, that in order to collect it, he had to qualify as executor in that State, and that it should not be considered as part of the estate in Arkansas, for the purpose of determining dower, until the settlement of the administration in Tennessee.

It was said by Hemingway, J., speaking for this court, in *Hewitt* v. *Cox*, 55 Ark. 238: "As Hewitt's (the deceased's) domicile at the time of his death was in Arkansas, it undoubtedly follows that the widow's right to dower in personalty, wherever situated, is determined by the laws of this State, and that it should be allotted to her as therein provided. But her right is not primarily a debt against the estate, but an undivided interest in it—a right to take a designated part of the specific personalty which the husband owned at the time of his death. Her interest is not subject to the husband's debts, and she may assert it against strangers and purchasers."

It is conceded that the debts probated against the estate in this State and in Tennessee, including burial expenses and expenses of administration, are small, and the estate solvent, and, the domiciliary administration being in this State, where the executor will have to account for all the personalty of the estate, there does not appear any necessity for making an order now with reference to this fund collected by the ancillary administration.

The chancellor properly required that an account be taken of all the personal property, and of the rents received for the year 1892, for the purpose of determining the amount of the widow's dower, but the settlement of the dower will not interfere with the administration of

the estate in the probate court.   The decree of the circuit court will only settle the amount to be allotted to the widow, and for which, when  he pays the same, the executor can take credit in  his  settlement  accounts in the probate court.

The cause will be reversed, and remanded for further proceedings not inconsistent with  this opinion.